**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**DENNIS ROBERT FLANAGAN,**

      **Plaintiff,**

**vs.**                              **Case No. 3:08cv204-RV/WCS**

**MARK SHIPMAN,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, filed an amended civil rights complaint alleging that the Defendant, the Senior Chaplain at Century Correctional Institution, violated his First and Fourteenth Amendment rights by canceling Native American religious services and imposing limitations.  Doc. 14.  Plaintiff also presents claims under the Religious Land Use and Institutionalized Persons Act.  *Id.*

Defendant Shipman filed a motion to dismiss, doc. 58, claiming that this case should be dismissed because Plaintiff did not exhaust administrative remedies prior to filing this action.  Defendant contends that administrative remedies were exhausted only as to Plaintiff's claims concerning access to Native American plants and having the

Chaplain supervise the services.  Doc. 58, p. 4.  Defendant also asserts that any

damages claims against him in his official capacity must be dismissed as Defendant is

entitled to Eleventh Amendment immunity, and that Plaintiff's damages claims against

him in official and individual capacities are precluded by 42 U.S.C. § 1997e(e).  *Id.*

Plaintiff was directed to file a response in opposition to the motion, doc. 61, and his

response, doc. 64, has been considered.

**Standard of Review**

The Eleventh Circuit has clarified that the "defense of failure to properly exhaust

available administrative remedies under the PLRA should be treated as a matter in

abatement."  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), *explained in* Turner

v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008).  Deciding an exhaustion issue is "not

ordinarily the proper subject for a summary judgment" motion; instead it should be

considered in a motion to dismiss.  Bryant, 530 F.3d at 1374-75.  The fact that exhibits

have been filed in support of the motion, doc. 58, does not require conversion to

summary judgment.  The process simply provides Plaintiff with "a meaningful

opportunity to oppose" the motion to dismiss.  530 F.3d at 1371, n.2.

**Claims of the Amended Complaint**

Plaintiff alleges that on November 9, 2006, Defendant Shipman became Senior

Chaplain and canceled Native American services, confiscated all Native American

plants, and denied Native American practitioners a place to pray.  Doc. 14, p. 8.  Plaintiff

alleges that Native American inmates were not permitted to use a designated area for

services, and were "denied the use of available staff to [supervise and] hold Native

American services . . . .  *Id.*  Defendant only allowed the inmates to "hold a meeting

once a week inside a 6 foot x 7 foot room." *Id.* On March 1, 2007, Defendant Shipman completely removed Native American services from the scheduled services in the chapel. *Id.* Thereafter, until August or September of 2007, an assistant chaplain allowed Native American inmates to meet when Defendant Shipman was not there, but by November, 2007, "the Native American practitioners were forced to stop going to the chapel." *Id.*

**Exhaustion of administrative remedies**

Plaintiff attached several grievances to his amended complaint, doc. 14, to show exhaustion of remedies as to his claims. The first was an "informal grievance" dated November 30, 2006, directed to the Defendant, which questioned the Defendant's "training or education" that qualified him "to place a substantial burden upon" Native American religious opportunities. Doc. 14, ex. A (doc. 14, p. 10). The informal grievance was denied on December 1, 2006, and advised that inmates who "practice the Native American religious observances as policy allows are put on an ongoing weekly callout." *Id.* The response further stated that the Chaplain was "attempting to recruit a qualified Native American Volunteer from a local Native American community." *Id.*

Plaintiff submitted a second "informal grievance" on the same day as the first, November 30, 2006, which was also directed to Defendant Shipman, asking why the Defendant "discontinued the use of 'Native American practitioners" and plants, religious ceremonies, and worship services. Doc. 14, ex. B (doc. 14, p. 11). The second informal grievance was also denied on December 1, 2006, and advised that "[a]fter the ceremony, the Native American practitioner/volunteer will place the pipe in its approved

cover and remove all sacred items from the compound." *Id.* The response further advised that the "chaplaincy services department makes every effort to allow all inmates to practice their faith as policy allows, procedure dictates and the good order of the institution allows." *Id.*

Plaintiff submitted a third "informal grievance" on November 30, 2006, again directed to the Defendant, which grieved the fact that on November 16, 2006, Native American practitioners were scheduled to hold a religious service, but when the inmates arrived at the chapel, they were told they "could not use" the designated outside area for their service. Doc. 14, ex. C (doc. 14, p. 12). Plaintiff asked why they were being denied their service. *Id.* The third informal grievance was denied on December 4, 2006, advising that Plaintiff was "provided to practice your faith as policy allowed [sic]." *Id.* The response also stated that there was a call out on that date and space was also provided. *Id.*

Plaintiff's fourth "informal grievance" dated November 30, 2006, directed to the Defendant, argued that by "denying the Native American practictioners [sic] the use of state approved and recognized Native American plants in their religious services," the Department was "placing a substantial burden on the exercise of their religious beliefs . . . " Doc. 14, ex. D (doc. 14, p. 13). The informal grievance was "returned" to Plaintiff on December 1, 2006, stating that a previous grievance responded to the issue raised. *Id.*

Plaintiff's fifth "informal grievance" dated November 30, 2006, argued that the Department was not complying with FLA. ADMIN. CODE R. 503.001(6) in that plants, pipe and smudging ceremonies do not require an approved Native American volunteer, but

can simply be "supervised by available staff."  Doc. 14, ex. E (doc. 14, p. 14).  The

informal grievance was denied on December 1, 2006, informing Plaintiff that only a

Native American practitioner or volunteer could "conduct the Sacred Pipe Ceremony."

*Id.*

      Plaintiff next filed a "formal grievance" to the Assistant Warden.  Doc. 14, Ex. F

(doc. 14, p. 15).  The copy of this grievance attached to document 14 as Ex. F is

incomplete.[1]  However, the complete grievance, which is on legal size paper, is

attached to the initial complaint, document 1, and was properly scanned into the

electronic docket.  Doc. 1, Ex. F (doc. 1, p. 25).  I will refer to the complete copy of this

formal grievance attached to document 1.  In this formal grievance, dated December 8,

2006, Plaintiff complained about being denied use of Native American plants.  *Id.*  He

said that these plants had been permitted by regulation for over 20 months.  *Id.*  He

asserted that the new chaplain would not allow him and others to hold services outside

in the space designated by the warden, but the Native American inmates were told they

"could hang-out in the chapel library."  He said that prayer circles were distinct from

sacred pipe and smudging ceremonies, and did not require an approved Native

American volunteer, and could be supervised by available staff.  *Id.*  He said that the

Native Americans had "always been supervised, either by the last chaplain, the tower or

from the back of the [control room] building," and asserted that there had never been

any problems.  *Id.*  He requested that "our service and our Native American plants be

allowed again, and our outside location [be] once again allowed."  *Id.*  The formal

---

[1] The copy obtained by Plaintiff was incompletely copied.

grievance was denied on December 19, 2006, with the response clarifying that Rule

503.001 differentiates Inmate prayer circles (which do not require an approved Native

American volunteer) from sacred pipe and smudging ceremonies.  Doc. 1, Ex. F (doc. 1,

p. 26).  The response also advised that "Inmate prayer circles must be held in the

chapel or other location designated by the warden."  *Id.*  Finally, the grievance stated

that Plaintiff has "been on a weekly call out, and provided with the opportunity to

participate in a prayer circle as policy permits."  *Id.*

Plaintiff then filed an appeal to the Office of the Secretary, the third step of the

grievance process.  Doc. 14, Ex. G (doc. 14, pp. 17-18).  Again, the grievance attached

to document 14 is incomplete, both in paper form and as scanned on the electronic

docket.  I rely upon the paper grievance attached to document 1, the initial complaint,

which was properly scanned onto the electronic docket.  The grievance was signed on

December 26, 2006.  Doc. 1, Ex. G (doc. 1, pp. 27-29).  Plaintiff alleged in this appeal

that he had been informed on November 16, 2006, by the assistant chaplain that he and

other Native Americans could not hold their service outside in the designated area and

would not longer be able to use the Native American plants approved an listed in Rule

502.001.  *Id.*, p. 27.  He asserted that this unreasonably burdened the exercise of his

faith.  *Id.*  He asked that the ceremonial plants be returned to the Chaplain and made

available for his religious service, that the chaplain supervise the service in the absence

of a Native American volunteer, and that the service be outside in the designated

location, when weather permits.  *Id.*, p. 28.  Plaintiff's grievance appeal was denied on

January 22, 2007.  Doc. 1, Ex. G (doc. 1, p. 30).  The denial stated that the plants were

to be used in the prayer circle for either smudging or smoking, and that a qualified

volunteer must be present for that ceremony. *Id.* Also, Plaintiff was told that for smoking, the volunteer must be a "certified pipe-carrier." *Id.* Finally, Plaintiff was told that "other institutions have Native American prayer circle without the use of 'plants.' " *Id.*

**Legal principles governing exhaustion of administrative remedies**

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2. The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[2].

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). In other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81,

---

[2] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying

with the specific prison grievance requirements, not judicially imposed requirements).  If

a grievance is initially denied as untimely, a prisoner must appeal the denial of the

grievance.  *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting Georgia's

inmate grievance procedures allow "the grievance coordinator to waive the time period

for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  If one

claim is unexhausted, the Court may separate that claim out and proceed on only those

claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at

223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of

those unexhausted "claims," not an entire "action.").

The purpose of the exhaustion requirement is for a prisoner to give the

Defendants fair notice with the information he has at hand.  Brown v. Sikes, 212 F.3d

1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance

all relevant information reasonably available to him" but he cannot be required to name

individuals responsible for challenged conduct when he could not yet identify those

persons).

> A fair notice standard for determining administrative exhaustion does not
> disturb the policies advanced by amended § 1997e.  Congress amended §
> 1997e to reduce the quantity and improve the quality of prisoner lawsuits.
> *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12
> (2002).  Administrative exhaustion reduces the quantity of prisoner suits
> by giving state officials an opportunity to take corrective action in response
> to prisoner grievances and, thereby, eliminates the need for some claims
> to be litigated, particularly frivolous claims.  *Id.* at 525, 122 S.Ct. 983.
> Administrative exhaustion improves the quality of prisoner suits by
> facilitating the development of "an administrative record that clarifies the
> contours of the controversy" in advance of litigation.  *Id.*  A fair notice
> standard continues to give state prison officials first opportunity to respond
> to a prisoner's allegations of mistreatment or misconduct.  If a district court

determines that prison officials have not been given fair notice of the claim being litigated against a defendant, the court will dismiss the claim against that defendant for failure to exhaust.

Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003).

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103.  It is beyond dispute that Plaintiff pursued each of the three steps of the grievance process.  The issue is whether the claims were fairly presented to prison officials.

**Alleged failure to exhaust**

Defendant contends that Plaintiff did not exhaust his administrative remedies as to his claims that (1) Defendant called his religion "pagan," (2) directly denied Plaintiff's ability to pray to his Creator, (3) canceled all Native American religious services, and (4)

denied the use of a designated area for Native American practitioners.  Doc. 58, p. 7.

Defendant contends that the "crux of Plaintiff's claims in the administrative process" was

only the loss of use of religious plants and failure to provide a chaplain to supervise the

Native American services so that services could be held without a qualified volunteer.

*Id.*, at 6-7.  Further, Defendant contends that because Plaintiff's appeal was addressed

in January of 2007, all claims concerning events which took place after that must

necessarily be considered unexhausted.  *Id.*, at 4-5.

    This argument is not persuasive.  "The level of detail necessary in a grievance to

comply with the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries

of proper exhaustion."  <u>Jones v. Bock</u>, 549 U.S. 199, 218, 127 S.Ct. 910, 923 (2007).

Defendant has not pointed to any prison rule with which Plaintiff did not comply.  Under

Rule 33-103.005(2)(b),[3] when an inmate submits an Informal Grievance, he must

"ensure that the form is legible, that included facts are accurately stated, and that only

one issue or complaint is address."  There is no requirement as to the degree of

specificity.  The same is true for presenting a formal grievance, FLA. ADMIN. CODE R. 33-

103.006(2), and a grievance appeal, FLA. ADMIN. CODE R. 33-103.007(2); an inmate

"shall state his grievance in Part A."

    Plaintiff complied with the rules.  Prison officials were put on notice that the

Native American services were stopped in the absence of the plants for the smudging or

pipe ceremonies, and that without a Chaplain to supervise the services when there is no

---

[3] The version of the rule cited is the 2005 version, in effect when Plaintiff was
filing his grievances.

"Native American volunteer," there could be no service.  Prison officials were put on notice that Plaintiff sought a designated place for services.  Prison officials at each level were required to look at what Plaintiff alleged at each lower level.  The factual allegations in the grievances were adequate to alert prison officials to the fact that Native American services were not taking place and that Native American plants were no longer allowed.  A reasonable investigation into Plaintiff's grievances *should* have put prison officials on notice of the specifics of Plaintiff's claims.[4]

It is true that the response to Plaintiff's formal grievance stated that Plaintiff had been "on a weekly call out, and provided with the opportunity to participate in a prayer circle as policy permits."  Defendant's ex. A (doc. 58-2, p. 6).  Perhaps if Plaintiff were unable to have any services, he probably should have said so more directly.  Still, a reasonable investigation into these allegations would have discovered this.  Plaintiff is not attempting to litigate unrelated claims and events.  All of his factual allegations concern the ability of Native American inmates to express their faith and participate in religious worship and ceremonies.  The claims in his complaint have not significantly

---

[4] A useful analog is the exhaustion requirement of an employment discrimination case.  Under Title VII, a complainant must have presented his or her claim to the EEOC for investigation before filing a claim in court.  In that context, courts have held that "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir. 2000).  In clarifying what is reasonable, the Eleventh Circuit has found that "[a]s long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them."  Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989) (citations omitted).  "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate" but allegations of new acts of discrimination are not appropriate.  Wu, 863 F.2d at 1547; *see also* Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980).

broadened the issues raised in the grievance process.  *See* <u>Baskerville v. Blot</u>, 224

F.Supp.2d 723, 730 (S.D. N.Y. 2002) (PLRA exhaustion requirement was satisfied

despite the fact that "[t]he scope of the grievance that plaintiff filed . . . was much

narrower than the issues he [was] raising in the instant complaint," and holding that the

grievances alleging the denial of medical care after the alleged assault was sufficient

since the investigation considered whether an assault had taken place); *Cf.* <u>Allah v.

Poole</u> 506 F.Supp.2d 174, 180 -181 (W.D. N.Y., 2007) (concluding plaintiff exhausted

his claims about not being allowed to speak Spanish and placement in the IPC, but

finding he did not exhaust his claim of a retaliatory transfer in prison jobs).  Plaintiff's

claims are related and sufficiently put prison officials on notice of the substance of

Plaintiff's issue with the Department.

Finally, despite the fact that several additional events took place after Plaintiff's

appeal was denied in January of 2007,[5] all of those events could reasonably be

expected to grow out of the issues Plaintiff had already raised.  For example, if a Native

American volunteer were not secured for services, and no staff member was available

to supervise, and if supervision is required by the rules, then there would be no service,

as Plaintiff argues in this case.  Eventually, when no services take place for several

months, it would be expected that services would be removed from the schedule.  Had

Plaintiff grieved again, the Department would have had another chance to again

evaluate Plaintiff's claims, but it is also possible that Plaintiff's claims would have simply

---

[5] Plaintiff alleged the Defendant removed the Native American service completely
from the chapel schedule and they were forced to stop going to the chapel.

been rejected because they had already been addressed.  *See* FLA. ADMIN. CODE R. 33-103.014(n).[6]

The grievance process was meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation.  Porter v. Nussle, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).  Reasonable notice was provided here and the exhaustion requirement was met.  The motion to dismiss on exhaustion grounds should be denied.

**Official Capacity Claims**

Defendant argues that Plaintiff may not sue the Defendant in his official capacity for money damages.  Doc. 58, pp. 7-8.  In response, Plaintiff points out that the State of Florida has waived its sovereign immunity by accepting federal funding and his claim under the RLUIPA should continue against Defendant in his official capacity.  Doc. 64, pp. 6-7, *citing to* Benning v. Georgia, 391 F.3d 1299 (11th Cir. 2004).

Bennett was a challenge to the constitutionality of the RLUIPA and in upholding that Act, the Eleventh Circuit noted that "Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA."  391 F.3d at 1305.  In the more recent case of Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007),[7] the Eleventh Circuit concluded explicitly that an inmate could "pursue an official capacity suit" against a prison official for "appropriate relief" which includes "an award of

---

[6] Rule 33-104.014(n) states: "A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it."

[7] However, the same case did state that the RLUIPA does not create "a private action against individual defendants for monetary damages."  502 F.3d at 1275.

monetary damages – albeit, in Smith's case, an award limited to nominal damages . . . ."  502 F.3d at 1275.

Plaintiff's amended complaint also presents claims under § 1983.  It is well established that the Eleventh Amendment is an absolute bar to a § 1983 suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities.  Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974).  Thus, a § 1983 suit against an official sued in his "official capacity" is barred by the Eleventh Amendment, unless one of three exceptions applies.  The first two exceptions are through a waiver of sovereign immunity.  See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985); Gamble v. Florida Dept. of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986).  Waiver may be either by the State or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment.  Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999).  Congress has not abrogated a state's immunity in enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979), nor has the State of Florida waived its Eleventh Amendment sovereign immunity.  Gamble, 779 F.2d at 1520.

The third remaining exception is through Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court); Sandoval v. Hagan, 197 F.3d 484,

492 (11th Cir. 1999), *citing* Summit Medical Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir. 1999). That exception is applicable because Plaintiff has sought not only monetary damages, but he seeks injunctive relief through the "return of Native American services." Doc. 14, p. 9.

Thus, to the extent Plaintiff's amended complaint seeks monetary damages against Defendant in his official capacity under § 1983, those claims must be dismissed. Plaintiff's amended complaint may proceed against Defendant in his individual capacity for relief under § 1983, and Plaintiff's claims may proceed against the Defendant even in his official capacity under the RLUIPA.

**Physical Injury Requirement**

Defendant also asserts that Plaintiff may not obtain compensatory or punitive damages as such a request is precluded by 42 U.S.C. § 1997e(e) absent physical injury. Doc. 58, pp. 8-9. Plaintiff argues that he is entitled to nominal, compensatory and punitive damages, notwithstanding 42 U.S.C. § 1997e(e).

Plaintiff has not alleged any physical injury or harm as a result of the alleged constitutional violation. Because there is no physical injury to Plaintiff, his request for monetary damages must necessarily be limited to nominal damages. 42 U.S.C. § 1997e(e). Smith, 502 F.3d at 1270-71, 1275-76; Harris v. Garner, 216 F.3d 970 (11th Cir. 2000)[8], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999); Osterback v. Ingram, et al., No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table). As explained by the court in

---

[8] Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied* 121 S. Ct. 2214 (2001). The parts of the panel opinion relevant to this legal issue were reinstated.

Smith, "a prisoner plaintiff's right to monetary relief is severely circumscribed by the terms of the Prisoner Litigation Reform Act ('PLRA'), 42 U.S.C. § 1997(e)."  502 F.3d at 1270-71.  Section 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  That statute applies whether the claims are brought pursuant to § 1983 or the RLUIPA.  Plaintiff may not recover either compensatory or punitive damages on any of his claims.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 58, be **DENIED in part and GRANTED in part**.  The motion should be granted to the extent that any request for monetary damages be limited to nominal damages pursuant to 42 U.S.C. § 1997e(e), but otherwise **DENIED**.  It is further **RECOMMENDED** that the case be **REMANDED** to me for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 20, 2009.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case 3:08cv204-RV/WCS