**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DENNIS ROBERT FLANAGAN,**

    **Plaintiff,**

vs.                                        Case No. 3:08cv204-RV/WCS

**MARK SHIPMAN,**

    **Defendant.**

                                    /

## SECOND REPORT AND RECOMMENDATION[1]

Plaintiff in this case is *a pro se* prisoner serving a life sentence in the Florida Department of Corrections. The Defendant is the Senior Chaplain at Century Correctional Institution where Plaintiff is housed.

**Plaintiff's claims, doc. 14**

Plaintiff alleges that when Defendant Shipman arrived at Century Correctional Institution as the Chaplain (in November, 2006), he "cancelled all Native American

---

[1] The first report and recommendation, doc. 69, denied the Defendant's motion to dismiss, doc. 58, in part and granted the motion in part. Plaintiff was found to have exhausted administrative remedies but Plaintiff's official capacity claim against the Defendant for monetary damages was dismissed. Docs. 69, 72.

religious services, confiscated all approved Native American plants and denied the Native American practitioners their ability to pray to their creator." Doc. 14, p. 8. Plaintiff also alleged that Defendant Shipman denied Native American inmates use of a designated location for services and use of staff to hold services. *Id.* On March 1, 2007, Defendant Shipman "removed the Native American service completely from" the Chapel's list of scheduled services. *Id.* Plaintiff alleged that another chaplain, Hughes, allowed the Native American practitioners to meet when Defendant Shipman was not there, but that practice was stopped sometime around August or September, 2007. *Id.* In November, 2007, Plaintiff alleged "the Native American practitioners were forced to stop going to the chapel." *Id.* Plaintiff's alleges that the Defendant violated "Plaintiff's religious freedoms under the First and Fourteenth Amendments of the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, Section 3." Doc. 14, p. 9. Plaintiff seeks a declaratory judgment, return of Native American services, and compensatory and punitive damages. *Id.*

**Defendant's motion for summary judgment, doc. 98**

Now pending is Defendant's motion for summary judgment, filed on May 24, 2010. Doc. 98. Plaintiff was advised of his obligation to respond to the motion under N.D. Fla. Loc. R. 56.1 and FED. R. CIV. P. 56, doc. 99, and Plaintiff was given more time to respond. Docs. 100, 102.

On July 2, 2010, Plaintiff filed several documents in opposition to the summary judgment motion. Plaintiff filed his "Declaration in Opposition to Defendant's Motion for Summary Judgement," doc. 104, and "Plaintiff's Statement of Disputed Factual Issues,"

doc. 105, and Plaintiff's "Brief in Opposition to Defendant's Motion for Summary Judgement," doc. 106, construed as Plaintiff's memorandum of law.

Plaintiff's declaration, doc. 104, is sworn under penalty of perjury and is properly considered as Rule 56(e) evidence in ruling on summary judgment. Plaintiff's memorandum, doc. 106, contains several affidavits which have been considered as Rule 56(e) evidence.

Plaintiff's statement of disputed factual issues, doc. 105, however, misunderstands the purpose of such a statement. Pursuant to Local Rule 56.1(A), the statement was to provide a "short concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," and was to reference the affidavit or other Rule 56(e) evidence which creates the factual dispute. Necessarily this would require a comparison of evidence submitted by Defendant to evidence submitted by Plaintiff. Document 105 simply identifies Plaintiff's list of issues which he believes must be determined at trial without showing how there is a genuine factual dispute as to each.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477

U.S. at 324, 106 S. Ct. at 2553. Plaintiff has produced evidence to be considered with his opposition to summary judgment, as discussed above.

**Rule 56 evidence**

Defendant Shipman arrived at Century Correctional Institution (C.I.) in November of 2006 to be senior Chaplain, and was Chaplain until June, 2008. Doc. 98 (Exhibits A, B, C). Upon arrival, Defendant found a green shoe box in the senior chaplain's office with cigarette rolling papers and a small selection of herbs or plant-like material. Doc. 98, Ex. A (affidavit of Defendant); doc. 98-1, p. 2. Defendant was informed by Chaplain Hughes that the plant materials belonged to the Native American inmate practitioners. *Id.* Chaplain Hughes also informed the Defendant that the Native American inmates had been allowed, under the previous chaplain, to gather every week outside the chapel area to have an unsupervised smoking ceremony and unsupervised smudging ceremonies. *Id.*

The cigarette rolling papers and collection of herbs and plant-like material appeared to the Defendant to be contraband, so he turned the box into the security department. *Id.* Defendant reviewed the Department's policies on Native American practices and consulted with a specialist from the Department's Central Office. *Id.* The conclusion was reached that the prior chaplain's practice of allowing *unsupervised* smoking and smudging rituals by inmates was not permitted under the Department's policy. *Id.* Thus, Defendant stopped allowing unsupervised smoking and smudging rituals at Century C.I. *Id.* Defendant continued to allow the Native American inmates to meet in the chapel for prayer. *Id.*, p. 3. Defendant stated in his affidavit that "[m]any Native American inmate practitioners were upset that [he] put an end, per Department

of Corrections policy, to their unsupervised and unsanctioned rituals." *Id.* Defendant acknowledges that after some unspecified period of time, the Native American inmates stopped coming to services but Defendant continued to include the Native American services on the monthly religious calendar. *Id.* Defendant continued to allow the Native American inmate practitioners to meet in the chapel for prayer. *Id.* Defendant states that he tried to get a volunteer to lead Native American prisoner services. *Id.* He contacted the Poarch Band of Creek Indians to recruit a volunteer but they were not interested in coming to the prison. *Id.*

Defendant states that he is not an adherent of a Native American religion. *Id.* Pursuant to Departmental policy, Defendant is not permitted to conduct the Sacred Pipe Ceremony. Doc. 98, p. 5, *citing* Procedure 503.001(3)(a) (Ex. E). Indeed, the Chaplain is to "verify the Native American practitioner's standing as a pipe bearer or medicine person." Doc. 98 (Ex. E); doc. 98-1, p. 17. The Department's policies also provide that smudging can only be "performed under the supervision of the Native American practitioner/chaplain/volunteer . . . ." Doc. 98, p. 5, *citing* Procedure 503.001(4)(a); doc. 98-1, p. 17. Inmate prayer circles "that are distinct from sacred pipe and smudging ceremonies do not require an approved Native American volunteer, but [can] be supervised by available staff." Doc. 98, p. 6 (Ex. E); doc. 98-1, p. 18. The procedures further specify that all Native American sacred items (including pipes, drums, and animal skins), must either be stored securely in the chapel or removed from the compound by the Native American volunteer when not in use. Doc. 98, Ex. E; doc. 98-1, p. 18.

Defendant states he never told Plaintiff or any other inmate that he "did not have to allow Native American services." Doc. 98-1, p. 1. Defendant denies that he told Plaintiff "that [he] was not concerned with his pagan service." *Id.*

When Plaintiff filed grievances about this issue, he was informed that the chaplain was "attempting to recruit a qualified Native American volunteer from the Native American community." Doc. 98, p. 6; doc. 14, ex. G. Another grievance response advised that pursuant to procedure 503.001, inmate circles that were "distinct from sacred pipe and smudging ceremonies do not require an approved Native American volunteer, but will be supervised by available staff." Doc. 98, p. 6; doc. 14, ex. H. That formal grievance response, dated December 19, 2006, also advised that Plaintiff had "been on a weekly call out, and provided with the opportunity to participate in a prayer circle as policy permits." Doc. 98, pp. 6-7; doc. 14, ex. H. The grievance appeal in January, 2007, again advised that plants could not be used for smudging or smoking without a qualified volunteer present, but that other institutions have Native American prayer circles without the use of plants. Doc. 98, p. 7; doc. 14, ex. I.

Plaintiff and all other "Native American inmate practitioners" are "not allowed to participate in any smudging or smoking ritual without a Native American practitioner/volunteer present to conduct and supervise the ritual." Doc. 98, pp. 7-8; Exhibits A, B, C, and E. Native American services were scheduled for Thursdays, and then on Saturdays. Doc. 98, p. 8; Doc. 98-1, Exhibits A, B, C, and D. Plaintiff was on the call-out for religious services. Doc. 98-2 (Ex. J), pp. 5, 7, 9, 12, 15, and 18.[2] Exhibit

---

[2] Dates are not provided on each page of the call-out sheets. Nevertheless, it is accepted for present purposes that the exhibit reflects that Plaintiff was still listed on a

J shows that contrary to Plaintiff's claim that on March 1, 2007, Defendant Shipman removed the Native American services from the list of scheduled services, Plaintiff was listed on the Thursday, March 1, 2007, chaplain call-out for a Native American service, but did not go. Doc. 98-2, pp. 25-27 (Ex. J). Plaintiff was also listed for the Native American services chaplain call-out scheduled for March 8, 2007, doc. 98-2, pp. 28-30; for March 22, 2007, doc. 98-2, p. 33; for March 29, 2007, doc. 98-2, p. 35; Saturday, April 7, 2007, doc. 98-8, pp. 36-37; and April 14, 2007, doc. 98-8, pp. 39-41. Plaintiff signed in for attendance during the Native American services on April 21, 2007, doc. 98-2, p. 44; and April 28, 2007, doc. 98-2, p. 49.

Only two inmates signed in for the Native American services on May 5, 2007, and May 26, 2007, and Plaintiff was not present. Doc. 98-2, pp. 55, 62 (Ex. J). Plaintiff was, however, present for the service on May 12th, doc. 98-2, p. 60; but did not attend the service on May 19th. Doc. 98-2, p. 61.

The other chaplain who worked with the Defendant at Century Correctional Institution was Richard Hughes, who also submitted an affidavit. Doc. 98-1; Ex. B (Hughes affidavit). Chaplain Hughes never saw the Defendant discriminate against any group, and avers that the Defendant was "fair to all religious groups." Doc. 98-1, p. 5. Chaplain Hughes confirmed that the prior practice of allowing unsupervised smudging and pipe-smoking rituals by inmates, without a Native American practitioner or volunteer being present, was against Departmental policy. *Id.*, p. 6. "Defendant Shipman allowed Native American inmate practitioners to meet in the chapel weekly and to conduct

---

call-out for Native American services, which continued after Defendant's arrival at Century Correctional Institution. Doc. 98-2 (Ex. J).

prayer circles."  *Id.*, pp. 6-7.  He confirmed that Native American prayer circles "were generally scheduled to meet on Saturday[3] when [he] was working but when Chaplain Shipman had the day off."  *Id.*, p. 7.  Chaplain Hughes also confirmed that the Native American inmates were "unhappy with Chaplain Shipman for enforcing Florida Department of Corrections policy and ending their unmonitored and unsanctioned rituals."  *Id.*, p. 6.

Marvin Bender served as a volunteer chaplain at Century Correctional Institution from November, 2006, through June, 2008.  Doc. 98-1; Ex. C (Bender affidavit).  Chaplain Bender averred that when Defendant Shipman "first arrived at Century C.I., he noticed that the inmates were engaging in certain religious activities not in accordance with Florida Department of Corrections policy."  Doc. 98-1, p. 9.  "For example, Native American inmate-practitioners were engaging in smudging rituals without a Native American practitioner/ volunteer being present."  *Id.*  Pursuant to Departmental policy, Defendant Shipman ended that practice.  *Id.*  While Chaplain Bender was serving at Century C.I., "a Native American practitioner/volunteer was not available to supervise and conduct Native American smoking and smudging rituals for inmates."  *Id.*

Defendant provided the court with a copy of Procedure 503.001, which is the Guidelines for Native American Religious Observances.  Doc 98-1 (Ex. D).  Under the guidelines, "[o]nly a Native American practitioner/volunteer will conduct the Sacred Pipe

---

[3] Defendant's exhibit D contains the calendars for January and March, 2007, which show that Native American services were scheduled for Thursdays at 1:00 p.m. at Century C.I.  Doc. 98-1 (Ex. D).  In May, 2007, the services were held at 1:00 p.m. on Saturdays.  *Id.*  In July, 2007, the time was adjusted to 8:00 a.m., but still held on Saturdays.  *Id.*

Ceremony." *Id.*, p. 17. The ceremony must be conducted at a "designated outside location under" supervision by a "qualified Native American practitioner/volunteer or a qualified institutional chaplain . . . ." *Id.*, p. 18. The same rules apply for smudging ceremonies. *Id.* The meeting must be supervised and performed by a Native American practitioner or volunteer, or a qualified chaplain. *Id.* Inmate prayer circles are to be held in the chapel or another designated location, and "do not require an approved Native American volunteer, but will be supervised by available staff." *Id.*, pp. 18-19.

Plaintiff's declaration, doc. 104, which is sworn under penalty of perjury, asserts that the Defendant told "Plaintiff that 'he did not have to allow the inmate native practitioners to practice their pagan religion at all in his chapel." Doc. 104, p. 3. Defendant assigned "non-Native American inmate chapel workers as inmate supervisors over the Native American religious service." *Id.*

Plaintiff states that in September, 2007, inmate worker Shawn Anderson physically interrupted the Native American prayer circle. Doc. 104, p. 4. He states that Chaplain Hughes was advised and took no action. *Id.* He asserts that Native American practitioners were forced to stop attending weekly meetings, presumably after inmate Anderson interrupted the prayer circle and due to that disruption, although that is not alleged. *Id.*

Plaintiff has submitted a "witness statement" from Donald Walsh who was incarcerated with Plaintiff at Century Correctional Institution until Walsh's transfer in October, 2007. Doc. 106-1 (Plaintiff's Ex. A). With the permission of former Chaplain Williams at Century C.I., a Native American religious group known as the "Native American Circle" was allowed to meet once a week on Saturday mornings for

expression of their faith. Doc. 106-1, p. 1. Inmate Walsh states that the inmates met "at the chapel where [they] were given an area out-of-doors to utilize for [their] 'Sacred Prayer Circle,' as is required by" their beliefs. *Id.*, pp. 1-2. Initially, the group met just outside of Chaplain Williams's office window so he could monitor the actions of the inmates. *Id.*, p. 2. Later on, the Native American area was "moved to a point in front of the chapel and" the front guard tower officer was to monitor the group. *Id.* The Native American inmates were moved a third time to an area "behind the chapel with the front guard tower still designated to monitor" the inmates. *Id.* At that time, the service time was changed to Thursday afternoons to eliminate conflict with Saturday's use "of the visiting park, which was right next to our designated area." *Id.*

At each of those designated areas, the "Native American Circle" was allowed to conduct weekly prayer circles without supervision except as noted by inmate Walsh. *Id.* In the weekly prayer circles, the inmates were "allowed to obtain sacred herbs: White Sage, Cedar, and Sweet Grass as well as Sacred Tobacco." *Id.* The "herbs were used in 'smudging' or purification ceremonies." *Id.* "The Sacred Tobacco was rolled in cigarette form and smoked as an offering and a physical manifestation of our prayers and thanksgiving to the Great Spirit." *Id.* Inmate Walsh stated this smoking "was done in lieu of the Sacred Pipe Ceremony which only a Department of Corrections authorized Native American Pipe Bearer could perform." *Id.*

Inmate Walsh acknowledges that the box containing the herbs was turned over to security by Defendant Shipman. *Id.*, p. 3. He complained that even though inmates were allowed to go to a room inside the chapel to meet as the Native American Circle,

they were not permitted to meet outside.[4]  *Id.*, pp. 3-4.  Inmate Walsh also complained about an inmate clerk who was placed in the room with the Native American inmates to act as a supervisor, but after "strong complaints to the chaplain" the inmate was removed from the services.  *Id.*, p. 4.

When the Native American inmates met with the Defendant and sought to have the outdoor services reinstated, the Defendant "refused to do so, stating that Department of Corrections policy and procedure required that an approved Native American Spiritual Advisor or Pipe Bearer would have to be obtained before we could resume any out-of-doors service."  *Id.*, pp. 4-5.  The inmates also requested that Defendant Shipman "obtain an approved Native American Spiritual Advisor/Volunteer or Pipe Bearer as . . . the Pipe Bearer that had been coming to see us [sic] was no longer able to do so."  *Id.*, p. 6.  The Defendant told them he was "in contact with someone on this issue, but could not find anyone to fill this role."  *Id.*

Plaintiff provided the affidavit of another inmate witness, William McKenna, who was housed at Century Correctional Institution and was also a Native American practitioner.  Doc. 106-1 (Plaintiff's Ex. B).  Inmate McKenna approached Defendant Shipman on November 9, 2006, to obtain the designated box from the chaplain's office which contained the sacred items for the Native American service.  Doc. 106-1, p. 8.  Inmate McKenna was informed the items had been turned over to security and the Defendant asked how the items got into the institution.  *Id.*, p. 9.  The Defendant told inmate McKenna that the Native American inmates could not use the items or sit in their

---

[4] Inmate Walsh does not state that the Defendant was responsible for any of these decisions.  *Id.*

"circle in the outside designated area to pray without an 'Outside Sponsor' according to the Defendant's interpretation" of the Department's policy. *Id.* The Defendant told inmate McKenna that no staff was "qualified to supervise nor observe a Native American prayer circle ceremony, and that we would have to remain inside the chapel and do without our spiritual items." *Id.* Inmate McKenna avers that the Defendant told him that their "Native American religion was not a religion, it was a 'pagan' ritual, and it did not conform with his personal inturperatation [sic] of religion nor the statues [sic]." *Id.*, p. 10.

David Kelso also submitted an affidavit in which he states that he "was a voluntary chapel orderly when at Century Correctional Institution, Century Florida." Doc. 106-1 (Plaintiff's Ex. C). He states that on one particular day (date not provided) the only room that was available was the chapel library. Doc. 106-1, p. 11. He was told (by an unknown person) to place the Native American inmates in the library at the table, and told to stay with them in the room. *Id.* Inmate Kelso states that "normally they would have their services without any of the orderlies in the room with them." *Id.*

**Analysis**

**First Amendment claims**

The First Amendment, made applicable to the States through the Fourteenth Amendment, "safeguards the free exercise of [one's] chosen form of religion." Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). The First Amendment provides, in relevant part, that Congress shall make no law prohibiting the free exercise of religion. U.S. CONST. amend. 1; Elk Grove Unified

School District v. Newdow, 542 U.S. 1, 124 S.Ct. 2301, 2307 n.4, 159 L.Ed.2d 98 (2004).

While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, *see* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (*per curiam*), prison regulations or policies "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (adopting the Turner v. Safley[5] standard of review to claims that a prison regulation violated an inmate's free exercise rights).

The reasonableness standard used in evaluating free exercise claims first considers whether a prisoner has been "substantially" burdened in his religious practice." Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). Next, Turner's reasonableness test employs four factors: "(1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives to the regulation." Spies v. Voinovich, 173 F.3d 398, 403 (6th Cir. 1999), *quoting* Turner, 482 U.S. at 90-91, 107 S. Ct. 2254; *see also* Overton v. Bazzetta, 539 U.S. 126, 136, 123 S.Ct. 2162, 2169, 156 L.Ed.2d 162 (2003). Courts must give deference to the judgment of prison administrators even in First Amendment

---

[5] Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

challenges raised within the confines of prisons or jails. O'Lone, 482 U.S. at 349, 107 S.Ct. 2400.

While Plaintiff argues there is a genuine dispute of material fact on whether Native American services were cancelled, Plaintiff failed to submit evidence which supports that allegation. The unrebutted evidence provided by the Defendant shows that inmates were still listed on call-out schedules for Native American services. Plaintiff has not provided any evidence to show that all services were cancelled or that the Defendant prevented Plaintiff from exercising his religious beliefs at these call-out services.

A possible exception is the evidence with respect to September, 2007, and thereafter, but even there, Plaintiff's proof fails. There is evidence that inmate Shawn Anderson disrupted one prayer circle held in the chapel. Plaintiff asserts that a complaint about Anderson was made to Chaplain Hughes, but nothing was done. Yet Plaintiff submits the affidavit of inmate Walsh that an inmate supervisor, not identified, was removed after complaints. Inmate Kelso submits an affidavit that he supervised a prayer circle, so there must have been other occasions when the prayer circle was held with inmate supervision. Plaintiff asserts that he stopped going to the indoor prayer circle, but he does not state why. Defendant Shipman states that the Native Americans stopped coming to the prayer circle, but he continued to schedule a prayer circle monthly. Plaintiff has the burden of proof, and this is simply not sufficient evidence to show that Defendant Shipman did anything to prevent Plaintiff from attending an indoor prayer circle after the incident with inmate Anderson in September, 2007.

The undisputed evidence reveals that the Defendant Shipman upheld Departmental policies and procedures that should have been in place at the institution. Had a qualified Native American chaplain been at Plaintiff's institution, or a Native American volunteer come forward, Plaintiff could have benefitted from a more complete exercise of his religious freedom. Plaintiff can participate in the Sacred Pipe Ceremony and Smudging when a qualified volunteer or chaplain is available, but in the meantime, he may still participate in prayer circles even without a volunteer or chaplain. Plaintiff may also engage in private prayer and meditation either in the chapel or outside, he may have weekly meetings with others of his faith, or at least monthly meetings, and he may receive religious materials through the mail. The free exercise of Plaintiff's religion has not been substantially burdened.

Further, the restrictions imposed by Defendant,all pursuant to Departmental policy, are reasonable under the O'Lone and Turner standard. The policy to not permit burning inside a building is a reasonable safety measure. The requirement that there be supervision when smoking or smudging ceremonies are conducted outside is also reasonable since it might be possible for contraband to be introduced and used, with the illegal substance being masked by the odor of burning the proper Native American herbs. This policy is reasonably related to a legitimate penological interest and must be upheld. The Defendant's actions to comply with a valid prison regulation means the Defendant is entitled to summary judgment on the First Amendment claim.

**RLUIPA Claim**

Plaintiff also claims a violation of his rights based on the same factual allegations under the Federal Religious Land Use and Institutionalized Persons Act of 2000

("RLUIPA"). In enacting the RLUIPA, Congress provided that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can demonstrate that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a), *quoted in* Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007). Thus, the RLUIPA provides prison inmates with a " 'heightened protection from government-imposed burdens," "by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest." Smith v. Allen, 502 F.3d at 1266, *citing* Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citation omitted).

However, in Cutter v. Wilkinson, 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 ( 2005), the Supreme Court said:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. In *Caldor*,[6] the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath." 472 U.S., at 709, 105 S.Ct. 2914. We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests." *Id.*, at 710, 105 S.Ct. 2914.
>
> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns.

---

[6] Estate of Thornton v. Caldor, Inc., 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985).

> While the Act adopts a "compelling governmental interest" standard, *see supra*, at 2118, "[c]ontext matters" in the application of that standard. *See Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. *See, e.g.*, 139 CONG. REC. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement S7775 (quoting S.Rep. No. 103-111, at 10, U.S.CODE CONG. & ADMIN.NEWS 1993, pp. 1892, 1899, 1900).

544 U.S. at 722-723, 125 S.Ct. at 2122-2123 (footnotes omitted).

Further, "to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice." Smith v. Allen, 502 F.3d at 1277. That question turns, in part, upon the degree to which the particular practice has been shown by the plaintiff to be fundamental to the exercise of the particular religion such that the denial of it would cause "more than an inconvenience on [his] religious exercise." 502 F.3d at 1278 (quoting Midrash, 366 F.3d at 1227). Stated another way,

> a "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents *to forego religious precepts* or from pressure that mandates religious conduct.

Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (emphasis added), *cert. denied*, 543 U.S. 1146 (2005). The existence of alternative means of religious expression is relevant to whether a substantial burden has been shown. *Id.*, citing Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir.1995). A plaintiff's failure to show a substantial burden results in a failure to prove a *prima facie* case. Smith v. Allen, 502 F.3d at 1279.

Case 3:08cv204-RV/WCS

As noted by the Defendant, because Defendant's actions were taken in conformity with the Department of Corrections rules and procedures, Plaintiff's claim challenges a departmental policy. Doc. 98, p. 12. The policy does not permit smoking or smudging ceremonies to occur without a Native American practitioner present to conduct and supervise the ceremony. *Id.*, *citing* Procedure 503.001. Defendant contends Plaintiff's claims fail to state a claim by pointing to case law which held that RLUIPA is not violated by a policy that requires outside volunteers or appropriately trained practitioners be present to lead certain Native American ceremonies. *Id.*, at 12-13. Further, Defendant contends that he did not substantially burden Plaintiff's ability to practice his faith because Native American services were still scheduled, Plaintiff was still listed on the call-out to participate in the Native American services, and Native American inmates could "worship in accordance with FDOC policy." Doc. 98, p. 13.

The evidence here reveals that Native American inmates could still attend worship and have prayer circle together. They can meet together freely to discuss their religious beliefs, to worship together, to pray together, to deepen their faith and encourage each other on their spiritual journeys. What they cannot do is meet together as a group outside, engage in pipe smoking or smudging ceremonies unless, pursuant to the rules, an outside volunteer who is qualified to handle certain sacred items is present. If a volunteer is available, then Plaintiff and other Native American adherents may participate in outside pipe-smoking and smudging ceremonies. This does not substantially burden the practice of Plaintiff's religion. It is an inconvenience, but Plaintiff has viable alternatives. He is not forced to forego religious precepts.

Plaintiff's inability to engage in those two activities is a result of unavailable volunteers and not actions by the Defendant, although Defendant is following prison policies. Those policies are necessary and justified by an important governmental interest as explained above. In context, the security concerns are a compelling interest.

## Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED** that the Defendant's motion for summary judgment, doc. 98, be **GRANTED** on all of Plaintiff's claims and judgment entered in the Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on December 3, 2010.

   s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**